No. 83-341

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN RE THE CUSTODY OF
ERICKA M.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael J. Lilly, Bozeman, Montana

For Respondent:

Landoe-Brown Law Firm; Peter S. Lineberger,
Bozeman, Montana

Submitted on Briefs: October 27, 1983

Decided: February 16, 1984

Filed: FEB 16 1984

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The original title in this cause has been changed by this Court on appeal to comply with section 40-4-103(2), MCA. The mother appeals from an order of the Eighteenth Judicial District Court modifying visitation rights of the father. The single issue on appeal is whether the District Court abused its discretion in expanding the father's visitation rights with his daughter. We affirm the judgment of the District Court.

Ericka's parents were married in California in 1973. Ericka was born in 1975. When her parents divorced, Ericka was less than 2 years old and lived with her mother. In 1979, the parents stipulated and a California court ordered that the father had the right to visit his daughter "in her home upon reasonable notice." Both parents have remarried. The visitation process has deteriorated in recent years despite the court's attempts to rectify the situation by ordering various visitation arrangements.

Ericka lives in Montana with her mother, step-father and step-sister. Her father still resides in California. With notice, he has traveled to Lake Tahoe, California and to Bozeman, Montana to visit with Ericka, as have his parents (Ericka's grandparents). The mother strongly resents and has discouraged visits, correspondence and gift giving. The parties have been to court at least nine times in Montana regarding custody, visitation and support of Ericka. This appeal is the latest in a sad series of litigation between the child's parents.

The District Court conducted a hearing on the father's petition for joint custody and expansion of visitation rights and the mother's motion to terminate all future custody and visitation by the father or his family. The court issued a

2

Modification Judgment and Decree, ordering two weeks visitation in California in August, 1983 with temporary custody of Ericka placed in her father, and visitation from August 1 until August 21, 1984, and each year thereafter until further court order. From this judgment, the mother appeals.

The controlling statute in this matter is section 40-4-217, MCA, which states in pertinent part:

"(1) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health.

. . .

"(3) The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health."

Under this section, the trial court may modify visitation whenever modification would serve the best interest of the child. However, the noncustodial parent shall not be restricted unless visitation would endanger the child. Sanderson v. Sanderson (Mont. 1981), 623 P.2d 1388, 1389, 38 St.Rep. 277, 278.

The primary factor to be considered is the best interest of the child, as set forth in section 40-4-212, MCA:

"The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

"(1) the wishes of the child's parent or parents as to his custody;

"(2) the wishes of the child as to his custodian;

"(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

3

"(4) the child's adjustment to his home, school, and community; and

"(5) the mental and physical health of all individuals involved."

Where there is substantial evidence to support the adopted findings of fact, specific findings on each of these 5 elements need not be made. Speer v. Speer (Mont. 1982), 654 P.2d 1001, 1003, 39 St.Rep. 2204, 2206.

The District Court heard conflicting testimony regarding past problems with visitation. However, the mother testified unequivocally that she did not and would not encourage Ericka to have a relationship with her father and that she had not told Ericka who her natural father was until ordered by the court to do so in preparation for a court-ordered visitation. While Ericka's grandmother was testifying at the 1983 hearing, the court had to admonish the mother not to make faces at the witness. The record is replete with evidence of the mother's animosity toward the father and his family.

Elizabeth Wheeler, Director of Court Services, testified that Ericka refused to participate in a court-approved visitation with her grandparents, who had traveled to Bozeman to see her in December, 1982. Ericka, who was 6 years old at that time, told Mrs. Wheeler that she did not want to see them because her grandmother was "mean," she did not like her, and her grandmother had left her when she was a baby. Ericka had not seen her grandmother since her third birthday, which she had spent happily at her grandparents' home with her father. Mrs. Wheeler testified that the mother in no way encouraged Ericka to accept the visitation and that, when asked to try to walk out leaving Ericka with Mrs. Wheeler for a few minutes to see if she might change her mind, the mother said she could not. Mrs. Wheeler also testified that she thought the fact that Ericka dislikes, hates and fears her

4

father and grandparents "creates a problem for her," and that "it's important that a child feel good about their parents." The District Court agreed.

Finding nothing in the record to elicit such a negative response from the child except her mother's attitudes, the District Court made the following finding of fact:

> "That the hostile and negative comments and attitudes of the small child are directly attributable to the influence of her mother, . . . who has displayed at all times throughout this hearing and other hearings, a hostile and open hatred of [the father] . . . and his family. [The mother's] . . . influence of the minor child is a threat to her emotional health and well-being and it is in the best interests of the child that she establish a normal and healthy relationship with her father and her aunts, uncles, cousins and grandparents, all of whom reside in southern California."

The visitation process at that time and all alternatives tried in the past required the father or the grandparents to travel to Montana. Visitors had to deal on a face to face basis with the mother or attempt to use Mrs. Wheeler as an intermediary. The court found that:

> "A continuation of the visitation process wherein the parties come face to face or where the process takes place under the watchful eye of . . . [the mother] is not likely to work and is detrimental to the best interests of the child and threatens her emotional health."

These findings are supported by the testimony and the physical evidence presented at the hearing. They form an adequate basis for the court's conclusion that:

> "There has been a material change of circumstances threatening the emotional health and welfare of the minor child since the previous Order and Judgment . . . made on September 28, 1982. Specifically, . . . [the mother] has now shown that any visitation procedure, whether it involves a face to face confrontation of the parties or the use of an intermediary and officer of the court, will not work because her influence is pervasive and her presence destroys the visitation process. If this influence is permitted to pervade the visitation process, it will effectively thwart all previous orders by the court, it will effectively terminate the father's rights, and it will result in the

minor child being denied the lasting benefit of being known and loved by her father and his family."

Based on the findings of fact and the evidence, we find no abuse of discretion by the District Court in modifying the father's visitation rights to permit the child to visit him at his home in California for a period of 3 weeks every August until further order of the court. The Modification Judgment and Decree of the District Court is affirmed.

We concur:

_____
Justice

_____

_____

_____

_____
Justices